First case this afternoon is case number 4-16-0707, Dealers Service Inc. v. County Collector for Jersey County. Appearing for the appellant is Attorney Van Leer Eckert and for the appellee is Attorney Philip Hamilton. Good afternoon. Good afternoon. Counsel, I'll advise you that Justice Steigman is a member of the panel that will decide this case. He is unable to appear today due to a death in the family. The oral arguments are being recorded and he will have access to that recording and will be a fully participating member of the court in its decision in this case. All right, Counsel, are you ready to proceed? Yes. All right. May it please the Court, Mr. Hamilton, Mr. Mag, good afternoon, Justices. My name is Van Leer Eckert. I'm the attorney for Dealers Service, who is the appellant in this case, and we're here arguing an appeal from the Jersey County Circuit Court in which Justice Eric Pistorius denied our petition for a tax deed based upon a motion that was filed by Mr. Hamilton and Mr. Mag. Just to frame the issue briefly, we believe that the appeal in this case is limited solely to when a mortgagee becomes owner of a property for purposes of attaining a tax deed. The crux here is, did my client, Dealers Service, have an ownership interest in this property which precluded him or it from obtaining a tax deed? So by way of a little bit of a history, the taxes at issue in this case were taxes that were sold, 2012 taxes, on a piece of property in Jersey County that were sold at the tax sale on November 4th of 2013. Our interest in that property did not attach by virtue of a second mortgage that we obtained from the owner until April 2nd of 2013. So there's been a lot of back and forth in the different briefs about two specific cases, one of which is Candlewick Lake Association from 1985, which is a second district case, and then a fifth district case from 1995, Bailey v. Mid-America Bank and Trust. We don't necessarily have an issue with Candlewick in the sense that Candlewick just basically says that if you have an ownership interest in a piece of property, you cannot leapfrog over anybody that's ahead of you, go to a tax sale, buy a tax certificate, then get a tax deed, and trump everybody else's rights. I believe that's basically what Candlewick stands for. But with the fifth district case in 1995, Bailey v. Mid-America Bank and Trust, it is the only case that actually defines what an ownership interest is. Candlewick says if you have an ownership interest, you cannot go to a tax sale, buy the tax certificate, and then get a tax deed. Bailey goes a little bit further and says you are not allowed to go to a tax sale, buy the tax certificate, and then get a tax deed if you have an ownership interest in the property. And it goes on to say and define an ownership interest in the property as for purposes of obtaining a tax deed, an ownership interest is defined as any interest being attached to the property on January 1st of the year for which the delinquent taxes were sold at the tax sale. Well, didn't the court in Candlewick also indicate that a mortgagee's or a laneholder's pre-tax sale interest in the property is what prohibits it from obtaining a tax deed? Yes, I believe that is correct. So didn't they address timing? I don't believe that they actually defined when the ownership interest attaches. I believe that is what Bailey does. Well, they refer to the pre-tax sales interest, so doesn't that indicate timing? I don't think I understand what you mean by the pre-tax sale interest. I think it indicates timing in the sense that it is retroactive to January 1st of the year for which the tax certificate is sold. That is the timing, and then it is defined in Bailey as January 1st. I did not read anything in Candlewick where it indicated that or defined the ownership interest in a way as having any sort of pre-tax interest. And if that is the way that justices are reading Candlewick, I would just reiterate to the court that we did not have a pre-tax sale interest in the property. The taxes that are at issue here were for 2012 with the redemption period of May 4th of 2016. So we filed our tax petition to obtain a tax deed prior to the May 4th, 2016 redemption period running for the 2012 tax certificate. We had no interest in the property as of January 1st of 2012. We didn't acquire an interest in the property until we recorded our mortgage in April of 2013. So under the Bailey court, the ownership interest attaches as of January 1st of the year for which the taxes are sold, in this case 2012. We didn't have an interest either in January of 2013. Our interest didn't attach until April of 2013. But again, we are only proceeding on the tax deed petition for the 2012 taxes. So I don't believe that we had any pre-tax sale interest in the property by virtue of when our mortgage actually attached to the property. So I think our situation, if you look at the case in Bailey, is analogous to the same situation that happened in that case. And that is that Mr. Bailey, who obtained an interest in a property in 1991, subsequently finds out that the taxes have been sold for 1990. It's not until he finds out that the taxes are sold that he fears that he's going to lose his interest in the property, goes to the tax buyer, buys the certificates, takes an assignment for the certificates from the tax buyer, then appeals to the court for a tax deed. And the court says, yes, you're able to get a tax deed in this case because your ownership interest didn't attach to that property until 1991. The tax deed petition was filed for the taxes for 1990. Our situation is the same. The 2012 taxes were sold to Saber Investments. The 2013 taxes were sold to Saber Investments. It wasn't until we realized that we were about to lose our interest in this piece of property in Jersey County that we go to Saber Investments and say, hey, we want to take an assignment of those tax certificates. Because we didn't have an ownership interest at the time the 12s were sold. We didn't have an ownership interest in the property at the time the 2013s were due to be paid. Our interest didn't attach until April of 2013. And then what was the ownership interest at that time? As a mortgagee. And that constitutes then an ownership interest? Correct. So, based upon the Bailey case, which we believe is the only case that addresses the issue of timing, it specifically states January 1st of the tax year for which the taxes are sold. In this case, 2012. But your interpretation of the law, and I'm not commenting on whether it's correct or incorrect, does permit you to leapfrog. Because of what you're suggesting is the precise definition of what that interest means, or when it attaches. That is correct, yes. We believe that the Bailey case allows us to do what we did. Which was, basically, out of fear for losing, just like the Bailey case, out of fear for losing what we had an interest in, we chose to take those tax certificates from the original buyer, and then petition for the tax deed. I understand that this is not determinative, because I think this is an issue of legal analysis, rather than public policy. But public policy would suggest that maybe you ought not be able to do that? Well, and I think that that's what Judge Pistorius reiterated and focused on. I think that that was the issue that Mr. Hamilton raised, was an equity issue. It's not equitable for somebody to step into the shoes and jump over or leapfrog other interested parties. However, we believe that the Bailey case supports our position, in the fact that it specifically defines when you actually acquire an ownership interest. We did not have an ownership interest in 2012, nor did we have an ownership interest in January of 2013. Therefore, we were, by virtue of that case, we were within our legal means to then buy those tax certificates from Saber Investments, and then petition for the tax deed in May of 2016.  All right, thank you. Thank you. May I please support opposing counsel, Mr. Megg? This whole case boils down to equity. Equity dictates the outcome of the case. Why? What was your question, I'm sorry? Why? Equity says that a mortgagee or a leanor who has the right to redeem the taxes cannot take the property by tax deed. They have a remedy. In fact, in this case, this party does have a remedy. They've got a foreclosure going on right now in Jersey City. For their mortgage and their lien. They're trying to foreclose the property now. But what they're trying to do is just pay the taxes and take a tax deed, and equity says, no, you can't do that. And it's a longstanding principle of equity. The case of Candlewick, this is exactly what this issue is about. It says that the owner or a mortgagee, having the interest that they do in the property, cannot acquire the property by tax deed. If they pay the taxes, they redeem the taxes. They don't get a tax deed. So it's not as if they don't have a remedy. I mean, when the property sells, they're going to be entitled to the taxes, but that would be an amount of money that they're going to get during the sale. But the case is expressly on point, and it goes back to cases from the 1800s. I mean, this has been a principle of law for a long time. It's one of the reasons why you don't see too many tax deed proceedings where a U.S. bank, for example, tries to take a tax deed, because they've got a remedy they can foreclose. The Candlewick case shows longstanding law that it is based on equity. It's not based on principles of law. They expressly rejected the position of the opposing party in that case in which they cited to the statute and said, hey, because of the way we interpret the statute, even though we have an interest in this property, we should be able to take a tax deed. The court rejected that argument. The argument that the tax deed petitioner makes here seems to be that we're talking about 2012 taxes. They had no interest in the property on January 1, 2012, and as such, they are not an owner of the property. And under their interpretation of the statute, since they're not an owner, they ought to be able to proceed with a tax deed. This is wrong. I mean, they clearly had an interest in the property at the time they tried to take the tax deed. And I'll agree that they weren't an owner of the property on January 1, 2012. In fact, they're not an owner now. I mean, they have a non-ownership interest in the property. But having acquired that... Is that how you would describe what they had in January of 2012? Well, I think they had no interest at all at that time. No interest at all at that time. Right. Their non-ownership interest arose in about 2013 when they took a mortgage, and then subsequently they bought a bank mortgage, and then they bought a bank lien. So they clearly had a non-ownership interest in the property at such time as they redeemed the taxes and at such time as they asked the court for the tax deed. And the principles of equity say, no, that party doesn't get to take a tax deed. Otherwise, every bank would just run in and pay the taxes and just take a tax deed. Why would they go through a foreclosure? And the reason it becomes important is because if somebody does have to go through a foreclosure, there's at least some chance that some party's going to come in and pay the full amount for the property. An owner might even have a surplus coming to them. And in this particular case, Carrie Ray has an equitable interest in the property. Because if this property can be sold, she might well stand to get some of the proceeds. Half the proceeds would go to David Ray and pay off his debts, and we have no problem with that. The other half could end up going to Carrie Ray. So there is an equitable interest of Carrie Ray as somebody with an ownership interest in that property. And that's the reason for this process, is because in a foreclosure, there's at least a theoretical chance that the owner's going to get something out of it if there's a surplus. All the other lien holders are going to get something out of it. Otherwise, all the lien holders would be a race to the courthouse to see who's going to pay the taxes, and then they'd try to get ahead of everybody and take a tax deed. And that would completely undermine the whole purpose of that statute to start with. The purpose of the statute is to make sure that somebody pays the taxes so that the county's not hung out to dry. That's all it's designed to accomplish. And so once they've paid those taxes, they're just a party in redemption, and they're entitled to those taxes. They're entitled to get that money back if this property sells at a foreclosure sale. But all the issues, I mean, in my brief, we go through every detail of the statute. You've got the Revenue Act, you've got the property tax code. It doesn't go anyplace. It's got nothing to do with the issue. Under longstanding settled law, you cannot, as a lien or a mortgagee, take a tax deed. There's nothing in the statute that says that you can. This property was sold at an annual tax sale as opposed to a scavenger tax sale, and there's discussion about what difference that makes in our briefs. In a scavenger tax sale, the restrictions are even more onerous, and it's set forth in the statute. In a scavenger tax sale, you can't have an interest in a property. You can't have an interest in any property that's in a tax sale. You have to file an application. You've got to file affidavits. It's a much more onerous process. But all of the discussion about the statute is theoretical because it's got no bearing on the issue. The fact that these guys were not owners on January 1, 2012, and that they've never been owners, has no bearing on the case. The only case that they've been able to cite to for any help at all is this Bailey case, and Bailey, all that does is enlighten us as to who might be an owner of the property based on a situation where somebody sold the property. And then there was a dispute about who was supposed to pay the taxes, and the buyer of the property ended up paying the taxes. They tried to get a tax deed, and at the last minute somebody redeemed the taxes. And so about the only thing that that case really stands for is that the tax deed buyer wasn't going to be able to get a tax deed, but they hadn't engaged in any nefarious conduct, which would give rise to a tax fraud action against that tax deed buyer. Under the statute, if somebody's been defrauded by a tax deed buyer, they can bring an action against them for damages, attorney's fees, and so on. So that's about the only thing that that case tells us. In other words, there was a guy named Paul, and there was a guy named Bailey. The court seems to say, well, they both had an ownership interest in the property at a particular time, but it doesn't shed any light on this case at all. So other than to reiterate what I've said in my brief, unless the panel has questions, I would cede what little time I have to the other party, Mr. Ray, the other appellee. All right. And counsel, if you could identify yourself again for the record and who it is that you represent in this case. Yes. My name is Thomas Magg. I represent David Ray, various Hunter entities, the Magg Law Firm. I think that's the universe of who I represent here today. And how much time did you agree between counsel and yourself to split here? All I was going to do is say is I joined counsel's argument, and I don't think I have anything else to add. I think he's done a fine job. All right. You've done it. Thank you. You get a lot of points for that. Thank you. All right. Rebuttal? Yes, Your Honor. Thank you. I would just begin by respectfully disagreeing with Mr. Hamilton's position that Bailey is not relevant to this case. I believe that Bailey is 100% on point in this case. I certainly understand Mr. Hamilton and Mr. Magg's position that this is a matter of equity, that it's not fair that we be allowed to step in and get a tax certificate in this particular case. And I think a lot of that has to do with just the virtue of this piece of property. We're talking about a 10,000-square-foot house and 250 acres of farmland and hunting ground in Jersey County, Illinois. So this is a sizable piece of property. And I certainly understand their equity argument. However, equity doesn't play any part in this particular case. This is a legal argument. Up until Bailey, nobody had defined what an ownership interest was. And it said a mortgagee, anyone with a lien on the property, has an ownership interest in the property. Bailey went on to say anyone with an ownership interest in the property, a mortgagee, a lien holder, has an interest and thereby, by virtue of that interest, can't petition for a tax certificate at a tax sale. However, the Bailey court went on to define when the ownership interest actually attaches to the property. That was something that wasn't addressed in Candlewick. I don't think there's anybody who's going to dispute that anybody's house who has a mortgage on it, a U.S. bank, has an interest in that property. And therefore, they can't, when somebody defaults on their mortgage, go and get the tax certificate from a tax sale. That's not what happened here. It wasn't until Bailey where the court says, the ownership interest attaches on January 1st of the year for which the taxes are sold. That was finally defined in 1995 by the appellate court in the 5th District. By virtue of that case, we did not have an ownership interest in this piece of property. In 2012, when those taxes went up for sale, our ownership interest, again, was attached by virtue of a second mortgage that was recorded April 2nd of 2013. This is a legal argument. We're hanging our hat on the Bailey case, and the Bailey case specifically, for the first time, defines what exactly the ownership interest means in terms of when it attaches to the property. And it attaches on January 1st of the year for which its taxes went up for sale. In this case, it's 2012. All right, counsel. Thank you. Thank you. This case will be taken under advisement and a written decision shall issue. Thank you.